UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH BAKER,

    Plaintiff,

v.

ANITA NORONHA, *et al*,

    Defendants,

Case No. 12-10642

Honorable Arthur J. Tarnow
Magistrate Judge Laurie J. Michelson

_____/

**REPORT AND RECOMMENDATION TO GRANT (1) MOTION TO DISMISS BY DEFENDANTS LISA ADRAY AND MARY K. BOLLHEIMER [11]; (2) MOTION FOR SUMMARY JUDGMENT BY PRISON HEALTH SERVICES, INC. AND ANITA NORONHA [18]; (3) MOTION TO DISMISS BY FOSTER MORRIS [40]; AND (4) MOTION TO DISMISS BY SUSAN KIRSTENSEN AND DEBORAH McMAHON [42]**

On February 14, 2012, Plaintiff Joseph Dale Baker, a Michigan Department of Corrections ("MDOC") inmate, filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that he has been denied proper medical care for a head injury while first confined at the Macomb Correctional Facility ("MRF") and now at the Parnall Correctional Facility ("SMT") in Jackson, Michigan. (Dkt. 1, Compl.) He also claims that he has been subject to a retaliatory prison transfer. (*Id.*) All pre-trial proceedings have been referred to this Court. (Dkt. 19.) Presently before the Court are four dispositive motions: Motion to Dismiss by Defendants Lisa Adray and Mary K. Bollheimer (Dkt. 11); Motion for Summary Judgment by Defendants Prison Health Services, Inc. and Dr. Anita Noronha (Dkt. 18); Motion to Dismiss by P.A. Foster Morris (Dkt. 40); and Motion to Dismiss by MDOC Defendants Susan Krsitensen and Deborah McMahon (Dkt. 42). Plaintiff did not oppose the Motions. For the reasons set forth below, the Court RECOMMENDS that the Motions be GRANTED.

**I.    BACKGROUND**

Plaintiff Joseph Dale Baker ("Plaintiff") alleges that he blacked out in the MRF restroom on November 2, 2010 and hit his head. (Dkt. 1, Compl. at 4). Plaintiff alleges that he reported his injury (excruciating pain and a lump on the back of his head) to a correctional officer who contacted health services and advised Plaintiff that he would be seen in a few days. (*Id*.) On November 5, 2010, Plaintiff was seen by Defendant Dr. Anita Noronha ("Noronha") who ordered an x-ray. (*Id*.) Plaintiff alleges that an unidentified x-ray technician told him the x-rays did not look "right" and appeared to show a crack in his skull, but other unidentified medical providers advised Plaintiff that "everything is normal/there is no medical problem." (*Id.* at 4, 6.) According to Plaintiff, he "sought additional medication for pain management due to the problem persisting and even worsening by requesting same through Health Care Requests" and "exhausted all remedies available to him through the Grievance Process, Steps I-III." (*Id*. at 6.) Plaintiff's complaint, however, did not attach any of these referenced kites or grievances. Plaintiff contends that the "lack of care to treat [his] pain, the refusal to provide [him] with sufficient pain management medications[,] and the refusal to provide [him] with the copies of the x-rays that were taken denied [him his] right to receive adequate medical care." (*Id.* at 4.)

On May 4, 2012, Defendants Lisa Adray and Mary Bollheimer filed what they styled a "Motion for Summary Judgment" pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 11.) While not mentioned in the complaint, Defendants' motion explains that Bollheimer is a Word Processing Assistant at the Duane Waters Health Center ("DLW") and Adray is a Registered Nurse at MRF. (*Id*. at 1.) MDOC Defendants Susan Kirstensen and Deborah McMahon filed a similar motion. (Dkt. 42.) They explain that McMahon is the Health Information Manager at SMT and

Kirstensen is the retired Health Unit Manager at MRF. (Dkt. 42 at 1.) These four Defendants seek dismissal as a matter of law because "[o]ther than identify[ing] them in his 'List of Defendants', [Plaintiff's] Complaint contains no allegations against them." (Dkt. 11 at 1; Dkt. 42 at 1.) Defendant Morris likewise contends that "Plaintiff's Complaint makes no specific allegations whatsoever against [him]." (Dkt. 40 at 4.) On May 23, 2012, Defendants Prison Health Services, Inc. ("PHS") and Dr. Noronha, also filed a motion for summary judgment. (Dkts. 18.) These two Defendants contend that Plaintiff's claims against them should be dismissed because Plaintiff failed to exhaust his administrative remedies and his allegations demonstrate that, as a matter of law, Dr. Noronha was not deliberately indifferent to a serious medical need. (*Id*.) Plaintiff did not file a specific response or opposition to any of the Defendants' motions.

Instead, on July 6, 2012, Plaintiff filed a Motion to Amend his complaint. (Dkt. 22.) This motion attached the medical kites and grievance documents referenced in Plaintiff's complaint. (*Id*. at Exs. A-J.) These documents include (1) a kite response from Dr. Noronha on November 23, 2010 stating that the x-ray of Plaintiff's head and skull was normal and that she ordered Motrin on his behalf (*id*. at Pg ID 166), (2) a Step II grievance response from April 7, 2011 explaining that Plaintiff's November 4, 2010 x-ray yielded normal results and that a January 14, 2011, medical appointment and examination for complaints of headaches, which included review of the radiology report, revealed that no further work up was needed (*id*. at Pg ID 184), and (3) the radiology report from Plaintiff's November 4, 2010, x-ray wherein the radiologist determined that Plaintiff's x-ray was "normal" with no abnormalities (*id*. at Pg ID 192). The motion also referenced Defendant Lisa Adray as having reviewed with Plaintiff his Step I Grievance. (*Id*. at 2.) Defendants PHS and Dr. Noronha opposed the motion. (Dkt. 23.) They argued that, even if the Court treated the motion to

3

amend as an opposition to their dispositive motion, they were still entitled to summary judgment. (*Id*. at 3.) This Court denied the motion to amend because it reasserted the same facts that formed the basis of the original complaint, with a little more documentary detail, and the Court was unable to discern any new allegations, counts, or parties that Plaintiff was seeking to add. (Dkt. 32.)

## II.     MOTIONS TO DISMISS BY ADRAY, BOLLHEIMER, MORRIS, KIRSTENSEN AND McMAHON

### A.     Legal Standard

Under Rule 12(b)(6), a case warrants dismissal if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law." *Harris v. Circleville*, 583 F.3d 356, 364 (6th Cir. 2009) (citing *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009)). When deciding a motion under Rule12(b)(6), "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true," and determine whether the plaintiff has alleged "enough factual matter" to "state a claim to relief that is plausible on its face." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard does not require a plaintiff to plead facts showing that liability is probable, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, a plaintiff has failed to "nudge[]" his claims "across

4

the line from conceivable to plausible." *Twombly*, 550 U.S. at 557.

### B. Plaintiff's Complaint Fails To State A Claim

Plaintiff's Complaint contains a "List of Defendants" naming 13 individuals and entities. (Compl. at Pg ID 2.) It identifies Adray's title as "RN," Bollheimer as "WPA," Morris as Physician's Assistant, Kirstensen as RN, and McMahon as RHIT. (*Id.*) Beyond this name-title listing, there are no other references to these five Defendants in the Complaint. There are no substantive allegations from which their specific involvement can even be inferred. Given the absence of any specific factual allegations against these Defendants, Adray, Bollheimer, Morris, Kirstensen, and McMahon contend they should be dismissed. ( Dkt 11 at 3; Dkt. 40 at 4; Dkt. 42 at 1.) The Court agrees.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *Twombly*, 550 U.S. at 555 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Indeed, "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed , even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). The Sixth Circuit law is in accord:

> Where a person is named as a defendant without an allegation of specific conduct, the complaint against him is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v.*

5

> *Montgomery*, 238 F.3d 421 [published in full-text format at 2000 U.S. App. LEXIS 30782], 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, 904 F.2d 708, 1990 WL 82722, at *1 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.") . . . .

*Cameron v. Howes*, No. 10-539, 2010 U.S. Dist. LEXIS 102122, *17-18 (W.D. Mich., Sept. 28, 2012).

In order to state a claim under 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff's allegations do not even mention Defendants Adray, Bollheimer, Morris, Kirstensen, or McMahon, let alone that they engaged in any active unconstitutional behavior.

This conclusion is not altered by Plaintiff's lone reference to Defendants Adray and Kirstensen's involvement in responding to a Step I Grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that a court may not impose liability under 42 U.S.C. § 1983 on a defendant simply because that defendant denied an administrative grievance or failed to act based upon information contained in the grievance.); *Newson v. Steele*, No. 09-10346, 2010 U.S. Dist. LEXIS 58075 (E.D. Mich. Jan. 14, 2010) ("Claims that are based simply on the denial of a grievance do not state a claim of constitutional dimension.") (citations omitted).

Accordingly, Plaintiff fails to state a claim against Defendants Adray, Bollheimer, Morris, Kirstensen, or McMahon and their unopposed Motions to Dismiss should be granted.

### III. MOTION FOR SUMMARY JUDGMENT BY NORONHA AND PHS

#### A. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001). The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

#### B. The Record Is Incomplete Regarding Exhaustion

Defendants first contend that they are entitled to summary judgment because Plaintiff did not exhaust his administrative remedies prior to filing the present action as required by 42 U.S.C. §1997e(a). (Mot. for Summ. J. at 6.)

7

The failure to exhaust is an affirmative defense to a civil suit brought by a prisoner. *Jones v. Bock*, 549 U.S. 199, 216 (2007). More specifically, the Prisoner Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones*, 549 U.S. at 918-19. The exhaustion prerequisite applies to all inmate suits about prison life – regardless of the nature of the wrong or the type of relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Moreover, the prisoner must "properly" exhaust his claims, which requires "'complet[ing] the administrative review process in accordance with the applicable procedural rules' – rules that are defined not by the PLRA, but by the prison grievance process itself. " *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). Therefore, Plaintiff is required to follow the grievance process detailed in MDOC Policy Directive 03.02.130 to its conclusion – a resolution of his Step III appeal – prior to filing a civil suit. Finally, Defendants have both the burden of proof and the burden of persuasion on the failure to exhaust affirmative defense. *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012.) As such, Defendants must do more than merely "present facts that if true would support the affirmative defense." *Id*. at 456. Defendants must affirmatively prove that Plaintiff failed to exhaust his administrative remedies. *Id*.

Defendants offer the affidavit of Richard Russell, the Manger of the Grievance Section of the Michigan Department of Corrections, which provides (1) that all Step III grievance appeals are recorded in a "Grievance Tracking" database, (2) that Russell caused this database to be searched for Step III grievance appeals filed by Plaintiff since April 1, 2009, and (3) the search revealed no Step III grievances from Plaintiff during this frame. (Mot. Summ. J., Ex. A, Russell Aff. ¶¶ 1, 11-12.) Thus, claim Defendants, Plaintiff has failed to exhaust any grievances involving medical

8

treatment at MRF following his fall on November 2, 2010.

Plaintiff did not rebut this fact in a response to the summary judgment motion. Plaintiff's complaint does allege that he exhausted his administrative remedies. The Court is mindful that a verified complaint has the same force and effect as an affidavit for summary judgment purposes and that the allegations should be considered "even if the prisoner fails to cite that evidence in response to a motion for summary judgment." *Miller v. Jones*, 483 F. App'x 202, 203 (6th Cir. 2012) (citing *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992)). Conclusory assertions, however, even those advanced in the form of a verified complaint, "are not sufficient to show a genuine issue of fact necessary for the denial of summary judgment." *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 343 (6th Cir. 1993). Plaintiff also attached supporting grievance documents to a motion to amend the complaint that he filed after Defendants filed their motion for summary judgment. (Dkt. 22, Exs. F-H.) Defendants Noronha and PHS indicated that it was unclear whether Plaintiff intended this motion as a summary judgment response. (Dkt. 23 Resp. to Mot. Amend at 3.) Plaintiff attached Step I and Step II grievance documents regarding medical treatment for the head injury he sustained following his blackout in the prison bathroom. (Dkt. 22, Exs. F, G.) Regarding Step III, Plaintiff attached a December 23, 2011 letter he sent to the Director's Office in Lansing inquiring about the status of the grievance. (*Id* at Ex. H.) The letter indicates that Plaintiff submitted a Step III grievance appeal but had not received a response. (*Id*.)

The Court tends to agree with Defendants that Plaintiff has not come forward with "specific facts showing that there is a genuine issue for trial" on exhaustion. Fed. R. Civ. P. 56(e). (Dkt. 23, Resp. to Mot. Amend at 6.) Neither his complaint, nor his proposed amended complaint, attach a

9

Step III grievance appeal or response, the MDOC database contains no record of such an appeal, and Plaintiff has provided no response to his letter inquiry to the State. Because this is a close question, however, and given Plaintiff's pro se status, the Court will address the merits of Plaintiff's Eighth Amendment claims.

    **C.    Plaintiff Has Failed To Allege An Eighth Amendment Violation**

        *1.    Legal standard*

Plaintiff alleges that Defendants' failure to treat the crack in his skull constitutes deliberate indifference to his medical needs in violation of the Eighth Amendment. "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn by Parks v. Madison County Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference is a "reckless disregard of a substantial risk of serious harm." *Rumsey v. Michigan Dept. of Corrections*, 327 F. Supp. 2d 767, 777 (E.D. Mich. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994)). "Mere negligence or malpractice is insufficient to establish an Eighth Amendment violation." *Bowman v. Corrections Corp. of Am.*, 350 F.3d 537, 544 (6th Cir. 2003). The inquiry into whether a prison official acted with deliberate indifference has both an objective and subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). In order to satisfy the objective component, the prisoner must show that the medical need is "sufficiently serious." *Id.* at 702-03 (quoting *Farmer,* 511 U.S. at 834). To satisfy the subjective component, the prisoner must allege facts that show that the prison official had a "sufficiently culpable state of mind." *Farmer* 511 U.S. at 834; *Comstock*, 273 F.3d at 703. Plaintiff must show that the official action amounted to a substantial risk to the prisoner, that

10

the official drew the inference regarding that risk, and that the official acted with disregard for the risk. *Farmer*, 511 U.S. at 836-37; *see also Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (explaining that a plaintiff "may satisfy the subjective prong of this inquiry by establishing that 'the official knows of and disregards an excessive risk to inmate health or safety,' which is to say 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'") (quotation omitted). Here, the complaint fails to allege conduct rising to the level of deliberate indifference.

### 2. Dr. Noronha

With respect to Dr. Noronha, Plaintiff alleges that she saw him on November 5, 2010 and, while she was hesitant to do so, she ordered an x-ray which was taken two days later. (Dkt 1, Compl.) Plaintiff alleges no specific wrongdoing or denial of care by Dr. Noronha. As mentioned, while Plaintiff alleges that an unidentified technician informed Plaintiff that the x-ray appeared to show a crack in his skull, other medical providers advised the opposite – that "everything is normal/there is no medical problem." (*Id*. at 4, 6.) This is consistent with the medical request and grievance forms referenced in Plaintiff's complaint and attached to his motion to amend the complaint. Those documents likewise indicate that the x-ray was normal and no further treatment was warranted. (Dkt. 22 at Pg ID 184, 192.) They also reflect that Dr. Noronha provided pain medication. (*Id*. at Pg ID 162, 166.)

The essence of Plaintiff's claim appears to be that he was not provided additional treatment or medication for his pain management. (Compl. at 6.) The Sixth Circuit has explained that "[w]here a prisoner has received *some* medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to

11

constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (emphasis added); *see also Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The Sixth Circuit does acknowledge, however, that "[a] claim of inadequate medical treatment[,]" as opposed to a claim of a complete denial of medical treatment, "may state a constitutional claim," but cautions that such claims are generally limited to situations where "the treatment rendered is 'so woefully inadequate as to amount to no treatment at all.'" *Clark v. Corrections Corp. of Am.*, 98 F. App'x 413, 416 (6th Cir. 2004). This is not such a case. Plaintiff's allegations make clear that he was treated following his fall. He disagrees with the diagnosis that his skull is not cracked and wants additional treatment. But a difference of opinion regarding medical care does not constitute a reckless disregard for a substantial risk of human harm. *Alspaugh*, 643 F.3d at 169; *see also Wright v. Gardener*, 57. F. App'x 666 (6th Cir. 2003); *Almond v. Pollard*, No. 11-1555, 2011 U.S. App. LEXIS 19199, 2011 WL 4101460 at *3 (7th Cir. Sept. 15, 2011) (affirming summary judgment in a case involving a prisoner's complaints about the treatment of his back pain, explaining that the prisoner "may disagree with the course of treatment chosen, but that disagreement does not amount to deliberate indifference." (citing *Alspaugh*, 643 F.3d at 169).

Plaintiff simply cannot carry his burden as to Dr. Noronha. His complaints go to the adequacy of his medical care; they do not state or raise an issue of unnecessary and wanton infliction of pain as required under *Estelle*. As he requested, Plaintiff was examined by Dr. Noronha and received an x-ray (as well as certain pain medications). Plaintiff does not allege that Dr. Noronha knew that Plaintiff had a skull fracture, or that she recklessly disregarded a substantial risk of a skull fracture. So even if Dr. Noronha subsequently failed to provide additional pain medication or other treatment desired by Plaintiff, this disagreement over his care does not rise to the level of an Eighth

12

Amendment violation. *See Humphries v. Smith*, 9 F. App'x 304 (6th Cir. 2001) ("[Plaintiff] presents a classic claim of medical malpractice as an allegation of deliberate indifference to serious medical need. Dr. Hughes assessed [plaintiff's] condition, made a reasonable diagnosis, and provided a treatment. Despite [plaintiff's] protests to the contrary, '[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.' At most, [plaintiff's] allegations describe 'an inadvertent failure to provide adequate medical care' which does not constitute deliberate indifference to serious medical needs.") (citing *Estelle*, 429 U.S. at 105-07); *Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003) ("[Plaintiff] and Dr. Coble clearly disagreed over the preferred medication to treat [Plaintiff's] pain. However, this difference of opinion does not support an Eighth Amendment claim.").

### 3. Prison Health Services

It is well established that PHS cannot be held liable under § 1983 on a respondeat superior or vicarious liability basis. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 56 L.Ed. 2d 611, 98 S. Ct. 2018 (1978); *see also Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (reiterating that PHS "may not be sued under § 1983 for an injury inflicted solely by its employees or agents.") For this Court to find PHS liable for a constitutional violation under § 1983, Plaintiff must show "deliberate action" by PHS "caused a deprivation of federal rights." *Starcher v. CMS et al.*, 7 F App'x 459, 465 (6th Cir. 2001) (citations omitted). Indeed, pursuant to *Monell*, Plaintiff must establish that PHS had a policy, custom, or practice that resulted in a deprivation of his constitutional rights. *Binion v. Glover*, No. 07-13443, 2008 U.S. Dist. LEXIS 70032 at * 46 (E.D. Mich. July 28, 2008). To establish the existence of a policy, practice, or custom, Plaintiff must demonstrate: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that PHS had

13

notice or constructive notice of such; (3) that PHS tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction;" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation. *Thomas*, 398 F.3d at 429 (quoting *Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996)). Thus, a claim premised on nothing more than the acts of one's agents cannot defeat summary judgment. *Wagle v. Skutt*, No. 10-cv-10506, 2011 U.S. Dist. LEXIS 138541 at * 19 (E.D. Mich. Nov. 7, 2011) ("To establish § 1983 liability against . . . Defendant PHS, Plaintiff must show that PHS implemented a policy, custom, or practice that caused a deprivation of Plaintiff's rights.").

Here, Plaintiff's complaint is devoid of any specific factual allegations against PHS. While Plaintiff complains about the lack of treatment provided by unidentified medical personnel, he does not allege that this was the result of any custom or policy of PHS. Plaintiff's claim against PHS is premised on nothing more than respondeat superior liability. As such, Plaintiff has failed to state a claim against Defendant PHS.[1]

## III. CONCLUSION

For the reasons set forth above, Adray and Bollmeier's motion to dismiss (Dkt. 11), Noronha and PHS's motion for summary judgment (Dkt. 18), Morris' Motion to Dismiss (Dkt. 40), and Kirstensen and McMahon's motion to dismiss (Dkt. 42) should be GRANTED.

## IV. FILING OBJECTIONS TO THIS REPORT

---

[1] Plaintiff has provided no allegations or argument that failure to provide a prisoner with copies of his x-rays constitutes deliberate indifference of a serious medical need in violation of the Eighth Amendment. Nor does it appear that Plaintiff's retaliatory prison transfer claim is being asserted against the medical defendants. Thus, the Court has not addressed these claims.

14

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES MAGISTRATE JUDGE

Dated: January 8, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 8, 2013.

                                                s/Jane Johnson
                                                Deputy Clerk